FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

25 AUG 25 PM 3: 06

Civil Action No. _____

(To be supplied by the court)

**LAURA ANN HALL**
_____, Plaintiff

v.

**BOARD OF COMMISSIONERS, PUEBLO COUNTY**
_____,

**CITY OF PUEBLO**
_____,

**see attached**
_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names of the defendants listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## COMPLAINT

---

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. <br><br> **Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

LAURA ANN HALL 2208 S PRAIRIE AVENUE PUEBLO CO 81005

(Name and complete mailing address)

(719)420-7074

(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    BOARD OF COMMISSIONERS, PUEBLO COUNTY

(Name and complete mailing address)

215 WEST 10TH ST PUEBLO CO 81003 (719)583-6000

(Telephone number and e-mail address if known)

Defendant 2:    CITY OF PUEBLO 200 S. MAIN ST PUEBLO CO 81003

(Name and complete mailing address)

(719) 553-2489

(Telephone number and e-mail address if known)

Defendant 3:    BRANDON MARTIN 323 W EVANS AVE PUEBLO CO 81004

(Name and complete mailing address)

(Telephone number and e-mail address if known)

Defendant 4:    see attached EXHIBIT A

(Name and complete mailing address)

(Telephone number and e-mail address if known)

2

## C.    JURISDICTION

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

☑    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

List the specific federal statute, treaty, and/or provision(s) of the United States Constitution that are at issue in this case.

42 USC § 1983 VIOLATION OF FIRST AND SECOND AMENDMENT RIGHTS

18 USC 242 DEPRIVATION OF RIGHTS UNDER COLOR OF AUTHORITY

☐    Diversity of citizenship pursuant to 28 U.S.C. § 1332 (a matter between individual or corporate citizens of different states and the amount in controversy exceeds $75,000)

Plaintiff is a citizen of the State of _____.

If Defendant 1 is an individual, Defendant 1 is a citizen of _____.

If Defendant 1 is a corporation,

Defendant 1 is incorporated under the laws of _____ (name of state or foreign nation).

Defendant 1 has its principal place of business in _____ (name of state or foreign nation).

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    FIRST AMENDMENT RIGHTS VIOLATION IN CASE 25CR632

Supporting facts: SEE D. STATEMENT OF CLAIMS

CLAIM TWO:  SECOND AMENDMENT RIGHTS VIOLATION IN CASE 25CR632

Supporting facts:  SEE ATTACHED D. STATEMENT OF CLAIMS

## E.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

## F.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

/s/ LAURA ANN HALL
_____
(Plaintiff's signature)


08/23/25
_____
(Date)



(Revised December 2017)

HALL V PUEBLO LIST OF DEFENDANTS

## **EXHIBIT A: LIST OF DEFENDANTS**

BOARD OF COMMISSIONERS, PUEBLO COUNTY /

    PUEBLO COUNTY SHERIFF'S OFFICE

        *215 WEST 10TH STREET PUEBLO COLORADO 81003 (719) 583-6000;*

    PUEBLO COUNTY SHERIFF'S DEPUTIES INVOLVED IN CASES
23CR813/25CR632 (as determined by discovery)

        *215 WEST 10TH STREET PUEBLO COLORADO 81003 (719) 583-6000;*

CITY OF PUEBLO / PUEBLO POLICE DEPARTMENT;

    PUEBLO POLICE DEPARTMENT OFFICERS INVOLVED IN CASES
23CR813/25CR632

       i. JAMIE KING 10853
      ii. JOSE MEDINA 1461
     iii. JORGEN MOORE 10854
     iv. REBECCA JAEGER 2298
     v. TYLER OKONSKY 11299
     vi. NATHAN SAIS 11567
    vii. HANNAH LYONS 11508
    viii.    BRIAN JAMES GOWIN 14402
     ix. DEPUTY CHIEF JIM MARTIN, in his individual capacity;
     x. and
       ALL INDIVIDUAL OFFICERS AND DEPUTIES of the Pueblo Police
       Department and Pueblo County Sheriff's Office listed in Exhibit A, in
       their individual capacities, (as determined by discovery)
*200 S. MAIN ST PUEBLO CO 81003 (719) 553-2489*

PUEBLO COUNTY DISTRICT ATTORNEY'S OFFICE;
KALA BEAUVAIS, in her individual and official capacity;

    *710 COURT STREET PUEBLO, COLORADO 81003 (719) 583-6030*

BRANDON MARTIN; *323 WEST EVANS AVE PUEBLO, CO 81004 (719) 250-8282*

JOSHUA ARCHULETA (DOB 6/5/84)*; ADDRESS/PHONE UNKNOWN, ASK DET MEDINA*

ASHLEE NEWTON*; 3121 ADRIAN AVE PUEBLO, CO 81008 (719)648-8822*

PATRICIA O'BRIEN, *4701 BRIARCREST DR, PUEBLO, CO 81005*

**Defendants.**

HALL V PUEBLO LIST OF DEFENDANTS

## **EXHIBIT A: LIST OF DEFENDANTS**

BOARD OF COMMISSIONERS, PUEBLO COUNTY /

    PUEBLO COUNTY SHERIFF'S OFFICE

        *215 WEST 10TH STREET PUEBLO COLORADO 81003 (719) 583-6000;*

    PUEBLO COUNTY SHERIFF'S DEPUTIES INVOLVED IN CASES 23CR813/25CR632 (as determined by discovery)

        *215 WEST 10TH STREET PUEBLO COLORADO 81003 (719) 583-6000;*

CITY OF PUEBLO / PUEBLO POLICE DEPARTMENT;

    PUEBLO POLICE DEPARTMENT OFFICERS INVOLVED IN CASES 23CR813/25CR632

        i.  JAMIE KING 10853
        ii.  JOSE MEDINA 1461
        iii.  JORGEN MOORE 10854
        iv.  REBECCA JAEGER 2298
        v.  TYLER OKONSKY 11299
        vi.  NATHAN SAIS 11567
        vii.  HANNAH LYONS 11508
        viii.      BRIAN JAMES GOWIN 14402
        ix.  DEPUTY CHIEF JIM MARTIN, in his individual capacity;
        x.  and
          ALL INDIVIDUAL OFFICERS AND DEPUTIES of the Pueblo Police Department and Pueblo County Sheriff's Office listed in Exhibit A, in their individual capacities, (as determined by discovery)

*200 S. MAIN ST PUEBLO CO 81003 (719) 553-2489*

PUEBLO COUNTY DISTRICT ATTORNEY'S OFFICE;
KALA BEAUVAIS, in her individual and official capacity;

    *710 COURT STREET PUEBLO, COLORADO 81003 (719) 583-6030*

BRANDON MARTIN; *323 WEST EVANS AVE PUEBLO, CO 81004 (719) 250-8282*

JOSHUA ARCHULETA (DOB 6/5/84*); ADDRESS/PHONE UNKNOWN, ASK DET MEDINA*

ASHLEE NEWTON*; 3121 ADRIAN AVE PUEBLO, CO 81008 (719)648-8822*

PATRICIA O'BRIEN, *4701 BRIARCREST DR, PUEBLO, CO 81005*

**Defendants.**

E. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Laura Ann Hall demands judgment against the Defendants, jointly and severally, and prays that this Court grant the following relief:

A. **Compensatory Damages** in an amount to be determined at trial, sufficient to fully compensate Plaintiff for her physical disfigurement and pain, her medical expenses of $24,889.71 from case 2019CR527, her lost past and future wages and earning capacity, the costs of her legal defense, bail for seven arrests, reputational harm, her emotional distress and mental anguish, and the loss of her constitutional rights.

B. **Punitive Damages** against each Individual Defendant in their individual capacity, in an amount sufficient to punish their willful, malicious, and reckless disregard for Plaintiff's rights and to deter such conduct in the future.

C. **Declaratory and Injunctive Relief**, including:

1. A declaration that the acts, policies, and customs of the Defendants violated Plaintiff's constitutional rights.

2. The entry of a permanent **Consent Decree** mandating comprehensive and verifiable reforms of the Pueblo Police Department, Pueblo County Sheriff's Office, and Pueblo County District Attorney's Office, to be supervised by a federal monitor appointed by this Court.

3. An injunction ordering the immediate removal from office of Defendants Jim Martin and any other official found to be actively engaged in ongoing unconstitutional practices.

4. An order compelling the immediate and unconditional return of Plaintiff's seized firearm.

5. An order compelling the Defendants to take all necessary steps to expunge the fraudulent records and rescind the "permanent ineligible status" with the CDOC and any negative actions taken by DORA.

E. Reasonable attorneys' fees and the full costs of this litigation pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c).

F. Such other and further relief as the Court deems just, proper, and necessary to dismantle this corrupt enterprise.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

**Case No.:** (to be supplied by the court)

**LAURA ANN HALL,**

**Plaintiff,**

     **v.**

**THE CITY OF PUEBLO, COLORADO/PUEBLO POLICE DEPARTMENT;**

**BOARD OF COMMISSIONERS, COUNTY OF PUEBLO, COLORADO/PUEBLO**

**COUNTY SHERIFF'S OFFICE;**

**PUEBLO COUNTY DISTRICT ATTORNEY'S OFFICE/KALA BEAUVAIS, in her**

**individual and official capacity;**

**JIM MARTIN, in his individual capacity;**

**and**

**ALL INDIVIDUAL OFFICERS AND DEPUTIES of the Pueblo Police Department and**

**Pueblo County Sheriff's Office listed in Exhibit A, in their individual capacities,**

**PATTI O'BRIEN**

**ASHLEE NICHOLLE NEWTON**

**BRANDON MARTIN**

**Defendants.**

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER COLOR OF AUTHORITY,**

**FALSE ARREST AND MALICIOUS PROSECUTION**

**(42 U.S.C. § 1983)**

**JURY TRIAL DEMANDED**

---

## I. PRELIMINARY STATEMENT: A PATTERN OR PRACTICE OF MALPRACTICE

1. This lawsuit is a direct challenge to a sprawling, multi-agency criminal enterprise that operates under the color of Colorado state law. For years, the Defendants named herein, from the highest levels of state and local government down to the street-level officer, have engaged in a coordinated and sadistic campaign to systematically destroy the life, liberty, and property of Plaintiff Laura Ann Hall. This was not a sequence of isolated mistakes; it was a conspiracy, executed with malice and precision. When Ms. Hall dared to exercise her First Amendment rights to speak out against government corruption, this enterprise unleashed its full arsenal: brutal, bone-shattering physical violence; a relentless barrage of fraudulent criminal prosecutions designed to bankrupt and discredit her; the systematic dismantling of her professional career; and the constant threat of further state-sanctioned terror.

2. The Defendants did not merely bend the law; they broke it, shattered it, and remade it into a weapon to be used against a citizen they deemed an enemy. They operated with the institutional arrogance of those who believe they are untouchable, protected by the shields of sovereign and qualified immunity. This complaint will demonstrate that their actions were so far beyond the pale of constitutional conduct, so violative of clearly established law, and so indicative of a

corrupt pattern and practice, that no form of immunity can or should protect them from

accountability.

3.  This action seeks to hold every single co-conspirator responsible for their role in this campaign

    of terror. It seeks not only to compensate Ms. Hall for the profound and permanent damage

    inflicted upon her life—the physical disfigurement, the emotional trauma, the financial ruin—but

    to obtain a binding Consent Decree that places the Pueblo Police Department, the Pueblo County

    Sheriff's Office, and the Pueblo County District Attorney's Office under the strict supervision of

    this Court. The rot is deep, the corruption is systemic, and the only remedy is a complete, court-

    ordered dismantling of the unconstitutional machinery that has been allowed to fester in Pueblo

    for far too long. We believe we could prove the existence of a Racketeer-Influenced Corrupt

    Organization (RICO) operating within the halls of government, and we would ideally demand it

    be brought to justice. Here, we ask for a simpler form of Justice.

## II. JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

    question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction), as this action seeks redress

    for the deprivation of rights, privileges, and immunities secured by the First, Second, Fourth,

    Eighth, and Fourteenth Amendments to the United States Constitution, actionable under 42

    U.S.C. § 1983.

2.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367,

    as they arise from the same common nucleus of operative facts and form part of the same case or

    controversy as the federal claims.

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Pueblo, Colorado, which is within this judicial district, and all Defendants reside, work, or are subject to personal jurisdiction within this district.

## III. THE PARTIES

### A. Plaintiff

1. Plaintiff **LAURA ANN HALL** is a citizen of the United States and a resident of Pueblo, County of Pueblo, State of Colorado.

### B. County-Level Governmental and Individual Defendants

1. Defendant **BOARD OF COMMISSIONERS COUNTY OF PUEBLO, COLORADO** is a municipal corporation and political subdivision of the State of Colorado. It is liable for the unconstitutional policies, customs, and practices of the Pueblo County Sheriff's Office and the Pueblo County District Attorney's Office.

2. Defendant **PUEBLO COUNTY DISTRICT ATTORNEY'S OFFICE** is the prosecutorial agency for the 10th Judicial District. It is the entity through which the malicious prosecutions were conducted.

3. Defendant **KALA BEAUVAIS** is the District Attorney for the 10th Judicial District. She is the final policymaker for the DA's Office. She is sued individually for personally initiating, directing, and conspiring in the malicious prosecution of Ms. Hall, in this and previous cases, and in her official capacity for injunctive relief.

4. Defendant **PUEBLO COUNTY SHERIFF'S OFFICE (PCSO)** is the principal law

enforcement agency for the County of Pueblo. It is liable for the policies and customs that

enabled its deputies to participate in the constitutional violations alleged herein.

## D. City-Level Governmental and Individual Defendants

1. Defendant **THE CITY OF PUEBLO, COLORADO** is a municipal corporation responsible for

the policies, customs, training, supervision, and discipline of the Pueblo Police Department

(PPD), its final policymakers, and its officers.

2. Defendant **PUEBLO POLICE DEPARTMENT (PPD)** is the municipal police force for the

City of Pueblo and the primary agency through which the physical violence and false arrests

were perpetrated.

3. Defendant **JIM MARTIN** is a Deputy Chief of the PPD and is sued in his individual capacity

for his role in the conspiracy and in his official capacity as a policymaker for injunctive relief.

## E. Other Governmental and Individual Defendants

PRIVATE CITIZENS ACTING UNDER COLOR OF THE AUTHORITY OF PUEBLO POLICE
DEPARTMENT:
1) BRANDON MARTIN,
   SON OF DEPUTY CHIEF JIM MARTIN, EVENT SECURITY, "POLICE LIAISON"
2) JOSHUA ARCHULETA (DOB 6/5/84), EVENT SECURITY, DISARMER
3) PATRICIA O'BRIEN, ORGANIZER OF NO KINGS PROTEST
4) ASHLEE NEWTON

## F. Individual Law Enforcement Officer Defendants

1. The individual law enforcement officers of the PPD and PCSO who personally participated in the constitutional violations are listed in **Exhibit A**, which is attached hereto and incorporated by reference. These officers are sued in their individual capacities for their direct participation in the unlawful acts described herein. John and Jane Doe 1-50 are unnamed co-conspirators whose identities are not yet fully known.

1) PUEBLO COUNTY SHERIFF'S DEPUTIES INVOLVED IN CASES 23CR813/25CR632
           JOHN AND JANE DOES 1-X
2) PUEBLO POLICE DEPARTMENT OFFICERS INVOLVED IN CASES 23CR813/25CR632
        i.   JAMIE KING 10853
        ii.  JOSE MEDINA 1461
        iii. JORGEN MOORE 10854
        iv. REBECCA JAEGER 2298
        v.   TYLER OKONSKY 11299
        vi. NATHAN SAIS 11567
        vii. HANNAH LYONS 11508
        viii.     BRIAN JAMES GOWIN 14402
        ix. DEPUTY CHIEF JIM MARTIN, in his individual capacity;
        x.   and
            ALL INDIVIDUAL OFFICERS AND DEPUTIES of the Pueblo Police Department and Pueblo County Sheriff's Office listed in Exhibit A, in their individual capacities, (as determined by discovery)

---

## IV. STATEMENT OF FACTS: THE SYSTEMATIC DESTRUCTION OF LAURA ANN HALL

### A. The Target: A Citizen Marked for Neutralization

1. Prior to the events detailed herein, Plaintiff Laura Ann Hall was in school to become a registered nurse and had secured a job at Colorado Mental Health Hospital in Pueblo as a CNA/QMAP.

Hall is an active, law-abiding citizen in Pueblo, Colorado with only a speeding ticket on her CBI
background check.

2.  She was also a vocal critic of what she perceived as endemic corruption, incompetence, and
misconduct within local government, particularly the Pueblo Police Department (PPD). Hall was
targeted by a Pueblo Police Captain, Kenny Rider,  beginning in 2017. Hall began to be pulled
over/contacted frequently in the City of Pueblo so Hall complained in City Council meetings and
to state and federal authorities. She used public forums and social media to voice her criticism,
citing specific instances of alleged police misconduct.

3.  Ms. Hall engaged in constitutionally protected First Amendment activity. Hall wore a MAGA
hat when Hall attended the "No Kings Protest," which was specifically aimed at opposing ICE
arrests. This hat was taken from Hall when she was tackled by the mob.

4.  Upon information and belief, this protected speech did not go unnoticed. Ms. Hall was identified
by officials within the No Kings security team, PPD, PCSO and the Pueblo County District
Attorney's Office not as a citizen exercising her rights, but as a threat to their institutional
authority. A decision was made among a core group of state actors to neutralize her.

5.  To achieve this, these state actors formed a conspiracy, an association-in-fact enterprise (the
"Pueblo Enterprise"). The initial conspirators included the son of Deputy Chief Jim Martin,
Brandon Martin, and his crack team of security clowns who noticed Hall's MAGA hat, noticed
Hall's open carry weapon and conspired to deprive her of her rights under color of authority due
to viewpoint discrimination, that authority being derived from Brandon's relationship to the NO
KINGS event and to the Pueblo Police Department. Brandon Martin described himself to the
media as the "police liaison" for the NO KINGS protest on June 14, 2025.

6. It has long been known that high-ranking officials within the PPD, characterized Hall as a problem or red flag individual without legitimate cause. The original complaint against Hall by Kenny Rider was in fact an act of kidnapping and harassment of Hall by Rider itself. Because local sheriffs covered for the local police captain, Hall was forced to plead guilty to harassment including former Chief Troy Davenport told former Mayor Nick Gradisar that Hall was a "frequent flier" when in fact Hall was being targeted by the police.

7. Upon information and belief, Deputy-Chief **Jim Martin** provided the local authority for Brandon Martin, Pueblo Police Officers Jamie King and Jorgen Moore and Det Jose Medina to target Ms. Hall.

8. The Enterprise required a pretext to act. They found one by entering into a conspiracy with a private citizen, Defendant **Patricia O'Brien**. Upon information and belief, following a political disagreement with Ms. Hall regarding Hall's presence at the NO KINGS protest activities, **O'Brien** agreed to act jointly with the PPD, through the head of her security team, Brandon Martin, who is the son of Deputy Chief Jim Martin. She began providing PPD officers with a series of complaints against Ms. Hall, which were known by both **O'Brien**, NO KINGS security and PPD to be exaggerated, misleading, or fabricated entirely. The named officers conspired to "find a reason to take Hall to jail." Jorgen Moore tells Jamie King and Jose Medina on BWC that they should just "do what we have to do to get her into jail" before telling Guerra to take HALL into Judicial. These pretextual complaints served as the official "justification" for the Enterprise to launch its campaign.

**B. The Weapon of Law: A Seven-Front War of Malicious Prosecution**

1. The Enterprise's primary strategy, orchestrated by **DA Kala Beauvais**, was to overwhelm Ms. Hall with a continuous barrage of fraudulent criminal prosecutions over a period of years. The goal was to bankrupt her, destroy her public reputation, and create a fraudulent criminal record. Most of those previous prosecutions exceed the statute of limitations for civil action. Due to her marriage to a Pueblo Police Officer, Brandon Beauvais, who was involved in numerous previous failures to convict Hall, DA Kala Beauvais has an axe to grind with Hall.

2. For each of the two most recent of the seven malicious prosecutions, the process was the same: a PPD or PCSO officer, one of the **Individual Officers listed in Exhibit A**, would receive or generate a pretextual complaint. That officer would then conduct a sham investigation, deliberately failing to interview exculpatory witnesses and authoring an official police report that contained material falsehoods and omissions.

3. This knowingly false report would be forwarded to the office of **DA Beauvais**. **Beauvais**, acting not as an independent prosecutor but as the legal arm of the Enterprise, would direct one of her deputy district attorneys to file charges, despite the fact that the reports, on their face, lacked probable cause.

4. This pattern was repeated previous six times, demonstrating a clear policy and conspiracy:

   ○ **Case No. 2017M1327:** Initiated based on a pretextual complaint, pursued by **Beauvais's** office for months before being dismissed for lack of evidence.

   ○ **Case No. 2018T494:** Filed by **Beauvais's** office based on a report from a PPD officer that knowingly omitted key contextual facts. Dismissed.

   ○ **Case No. 2019CR527:** The central case involving the physical assault, initiated by PPD officers and pursued by **Beauvais** despite the clear unconstitutionality of the underlying arrest and the physical evidence of excessive force used against Ms. Hall. Dismissed.

- **Case No. 2019M707:** Initiated by PPD based on a complaint from a co-conspirator, pursued by **Beauvais**. Dismissed.

- **Case No. 2022CR1001:** Filed by **Beauvais's** office long after the alleged incident, demonstrating retaliatory and harassing intent. Dismissed.

- **Case No. 2023CR813:** The final prosecution, initiated after Ms. Hall continued to publicly protest her treatment, demonstrating a direct causal link between her protected speech and the filing of charges. Dismissed.

5. DA Beauvais is currently prosecuting Hall for a seventh malicious prosecution: **Case No. 2025CR632.** Hall expects to prevail because the DA has no case.

6. In each instance, **Beauvais** had final authority on the decision to prosecute. Her personal and repeated approval of these baseless charges, knowing they were part of a broader campaign of retaliation, places her actions far outside the shield of prosecutorial immunity. Prosecuting cases based on false allegations is prosecutorial misconduct.

## C. The Weapon of Force: A Punitive Beating Under Color of Law

1. The Enterprise did not limit its attacks to the courtroom. During the arrest for the sham Case #2019CR527, the PPD's role escalated from harassment to brutal physical violence.

2. While being taken into custody by PPD Officer Chad Albaugh, among others, Ms. Hall was not resisting arrest and posed no threat to the officers. Despite this, one or more of these officers, acting on the implicit or explicit approval of their supervisors, executed a punitive assault on her person.

3. The assault consisted of tackling Hall and allowing a civilian to apply his body weight through his knee to Ms. Hall's left temple. The force was so severe that it visibly **shattered the sphenoid bone of her left orbital socket**, resulting in redness and swelling.

4. This attack also flooded Hall's left ear with blood, wrecking her balance. Hall was forced to crawl to the toilet in jail.

5. During the attack, Hall was drugged against her will, at the behest of PPD, by an EMT using sedative drugs that are to be used in a clinical setting, authorized by a local doctor, without knowing Hall's medical conditions or current medications and over her strenuous physical objection.

6. This was not a control technique; it was a deliberate, malicious, and sadistic act of violence intended to inflict grievous injury and terrorize a political dissident in the name of asserting dominance over a speeding infraction. This is a pattern or practice of Pueblo Police Department as a whole.

7. Present at the scene were **other PPD officers**, who witnessed this unconstitutional assault. These officers had a clear duty and opportunity to intervene and stop the violence. They deliberately failed to do so, standing by as their fellow officers committed a felony battery.

8. Upon information and belief, no officer involved in the assault or who failed to intervene was ever investigated, disciplined, or retrained for this incident by PPD command staff, including **Chief at the time Davenport, Current Chief Noeller, or Deputy Chief Martin**. This failure to act, in the face of a citizen's severe injury, constitutes a ratification of the unconstitutional conduct and demonstrates the PPD's official custom of tolerating extreme violence against perceived enemies.

**D. The Financial Execution: A Coordinated, Multi-Agency Conspiracy to Destroy a Career**

1. With the fraudulent legal groundwork laid and Ms. Hall physically brutalized, the Enterprise
   moved to its next objective: the complete and permanent destruction of her livelihood. This was
   a sophisticated, multi-step operation requiring the active participation and conspiracy of multiple
   state and local agencies.

2. **Overt Act 1: Seizure of Property.** During one of her arrests, **PPD or PCSO officers** seized Ms.
   Hall's legally owned firearm. Despite the illegal seizure, the PPD has, to this day, refused to
   return her property, constituting an ongoing, unlawful conversion of her assets.

3. **Overt Act 2: Transmission of Fraudulent Data.** Upon information and belief, on or about the
   date of each of her six arrests, the PPD transmitted the arrest data to the Colorado Bureau of
   Investigation's crime database. Subsequently, **DA Beauvais's** office formally transmitted the
   charging documents to the state court system. These transmissions were overt acts in the
   conspiracy, knowingly placing fraudulent data into official state channels where other agencies
   could access it.

4. **Overt Act 3: The CDOC Blacklist.** The **Colorado Department of Corrections (CDOC)**,
   accessing the fraudulent arrest and prosecution data, placed a **"permanent ineligible"** status flag
   on Ms. Hall's name and background file. This was an administrative action, taken under the
   policy direction of the CDOC BIU director, which functioned as a permanent blacklist, barring
   her from any employment with the state's largest employer.

5. **Overt Act 4: Termination of Employment.** The **Colorado Mental Health Hospital in Pueblo
   (CMHHIP),** Ms. Hall's employer, was officially notified of the CDOC flag and the pending
   fraudulent charges. Citing these fraudulent predicates, and under the policy direction of its
   leadership, CMHHIP terminated Ms. Hall's employment as a certified nurse assistant on or about
   April 2, 2025, and again on June 17, 2025.

6. **Overt Act 5: Destruction of Professional License.** The cumulative effect of a record showing six criminal prosecutions (despite all being dismissed), termination from a state hospital, and a CDOC blacklist rendered Ms. Hall's professional nursing license, overseen by the **Department of Regulatory Agencies (DORA)**, functionally useless. She was rendered unable to pass the background checks necessary for employment in her chosen profession with the area's primary employer, effectively depriving her of the property and liberty interests in her license and career.

7. **Hall's arrest in cases 19CR527 and 25CR632 made the local news on television, print and social media, making her a pariah for local employers.** Hall has longstanding family ties to the Pueblo community and relocation is not an option.

## E. Institutional Ratification: The Custom of Impunity

1. Ms. Hall did not suffer in silence. After each incident of misconduct, she attempted to use official channels to seek redress by writing letters to of filing formal complaints with the PPD's Internal Affairs division, Pueblo Human Relations Commission, Office of Attorney Regulation Counsel, Commission on Judicial Discipline, Colorado Attorney General and Federal Bureau of Investigation.

2. Instead of conducting good-faith investigations as required by departmental policy, PPD command staff, including, upon information and belief, former **Chief Davenport**, and his successor, Chief Chris **Noeller**, systematically subverted the process. Complaints that met the criteria for a formal investigation were instead diverted to field supervisors who lacked the authority and impartiality to investigate their colleagues and superiors. Attorney Joe Koncilja once told Hall, "they are not going to do anything to these cops."

3. The result of every complaint was a finding of "Exonerated" or "Unfounded," despite video and
medical evidence supporting Ms. Hall's claims. Hall has the letters. No officer was ever
disciplined. This sham review process served only to ratify the initial misconduct and signal to
all PPD officers that they could violate Ms. Hall's rights with absolute impunity. This custom of
non-investigation and non-discipline is an official policy of the City of Pueblo and was the
moving force behind the repeated violations. Deputy Chief Jim Martin is in charge of officer
training and Internal Affairs so he wields tremendous power over the behavior of Pueblo Police
officers. This power was evident by the protection provided to the June 14, 2025, No Kings
protest by Pueblo Police Department, where Jim Martin's son thought it was ok to tackle a
woman and disarm her because he did not like her hat.

---

**CLAIM ONE: 42 U.S.C. § 1983 – Fourth Amendment Violation (Excessive Force)
During Arrest for Case #2019CR527**

- **Right Violated:** The Fourth Amendment right to be free from unreasonable seizures, which
  includes the right to be free from excessive and sadistic force.
- **Supporting Facts:**
1) During the arrest of Plaintiff Laura Ann Hall in connection with the fraudulent prosecution
   later docketed as Case #2019CR527, **Chad Albaugh** of the Pueblo Police Department
   (PPD), whose identities are known to Defendants, subjected Plaintiff to a brutal and punitive

physical assault. These officers, without legal justification, used a degree of force that was grossly disproportionate to any perceived threat.

2) Their actions were malicious and sadistic, culminating in them striking Plaintiff with such force as to **shatter her orbital bone (eye socket)**. This act constituted a battery under the color of law.

3) This unconstitutional custom of violence was fostered and ratified by the deliberate indifference of their supervisors,

4) Defendants **Chris Noeller** and **Jim Martin**, who failed to train, supervise, or discipline their officers, thereby causing Plaintiff's injuries.

- At all times relevant, these Defendants were acting under color of the statutes, ordinances, regulations, policies, and customs of the City of Pueblo.

- **Specific Damages:** As a direct result of this excessive force, Plaintiff suffered a permanent and disfiguring physical injury, incurred medical expenses of $24,889.71, and endured extreme physical pain and severe emotional distress.

## CLAIM TWO: 42 U.S.C. § 1983 – Failure to Intervene
## During Arrest for Case #2019CR527

- **Right Violated:** The Fourth Amendment right to the protection of law enforcement officers from the unconstitutional acts of other officers.

- **Supporting Facts:**

5) During the unconstitutional assault on Plaintiff described in Claim One, **additional PPD officers** were present, personally observed the excessive force being applied, had a realistic opportunity to intervene and stop the assault, and deliberately chose not to act.

6) Their inaction and passive complicity facilitated the violation of Plaintiff's rights. Their

failure to intervene breached their clearly established constitutional duty.

At all times relevant, these Defendants were acting under color of the statutes, ordinances,

regulations, policies, and customs of the City of Pueblo.

**Specific Damages:** Plaintiff's injuries were caused and exacerbated by these Defendants'

failure to perform their constitutional duty to intervene.

## CLAIM THREE: 42 U.S.C. § 1983 – Malicious Prosecution

## 2017-2025 Campaign of Legal Harassment

- **Right Violated:** The Fourth and Fourteenth Amendment right to be free from unreasonable

    seizures and deprivation of liberty pursuant to legal process initiated without probable cause.

- **Supporting Facts:**

    7)    Defendant **Kala Beauvais,** acting outside the scope of her absolute prosecutorial

    immunity by conspiring with police and directing investigations, personally initiated and

    oversaw a campaign of malicious prosecutions against Plaintiff.

    8)    This campaign included cases **2017M1327, 2018T494, 2019CR527, 2019M707,**

    **2022CR1001, and 2023CR813**.

    9) Each case was initiated without probable cause.

    10) This was accomplished through the overt acts of individual **PPD and PCSO officers (listed**

    **in Exhibit A)**, who, at the direction of or in conspiracy with **Beauvais**, swore out false and

    misleading affidavits, omitted exculpatory evidence, and manufactured baseless charges.

    11) All of these prosecutions were terminated in Plaintiff's favor.

- At all times relevant, these Defendants were acting under color of the statutes, ordinances, regulations, policies, and customs of the County and City of Pueblo.
- **Specific Damages:** Plaintiff was forced to expend significant financial resources on legal defense, suffered multiple deprivations of liberty, sustained severe damage to her reputation, and endured extreme emotional distress.

## CLAIM FOUR: 42 U.S.C. § 1983 – First Amendment Retaliation
## The Entire Coordinated Campaign

- **Right Violated:** The First Amendment rights to free speech, assembly, and to petition the government for a redress of grievances.
- **Supporting Facts:**

12) Plaintiff engaged in constitutionally protected activities, including and participating in the "No Kings Protest" and being a vocal critic of local government corruption.

13) In direct retaliation for this protected activity, the Defendants engaged in a coordinated campaign of adverse actions intended to punish and silence her. Specific retaliatory acts include:

14) **Defendant ASHLEE NICHOLLE NEWTON**, a private citizen acting in conspiracy with state actors, made false and pretextual complaints to the PPD to instigate official action.

15) **Defendant BRANDON MARTIN**, a private citizen acting in conspiracy with state actors, made false and pretextual complaints to the PPD to instigate official action.

16) **Defendant PATTI O'BRIEN**, a private citizen acting in conspiracy with state actors, supervised the security team that kidnapped, robbed, and disarmed HALL at the NO KINGS protest.

17) **Defendants Noeller and Martin** allowed and encouraged their PPD subordinates to target Plaintiff with no penalties.

18) **Defendant Beauvais** weaponized her office to prosecute Plaintiff despite the obvious violations of Hall's rights in this arrest and several others.

At all times relevant, these Defendants were acting under color of law or in a conspiracy with those who were.

**Specific Damages:** Plaintiff suffered a profound chilling of her rights and endured all damages flowing from the retaliatory campaign, including physical injury, financial ruin, and emotional trauma.

**CLAIM FIVE: 42 U.S.C. § 1983 – Deprivation of Property & Liberty Without Due Process (First, Second, Fourth, Eighth and Fourteenth Amendment)**

**Coordinated Destruction of Professional Career During arrest for Case 25CR632**

- **Right Violated:** The Fourteenth Amendment right not to be deprived of liberty or property without due process of law.

- **Supporting Facts:**

19) The Defendants conspired to destroy Plaintiff's professional career. This was accomplished through a series of coordinated overt acts:

  a. **Defendants Beauvais** and various **PPD/PCSO officers** created fraudulent criminal records through malicious prosecutions.

  b. These fraudulent records, created from 2017-2025, were transmitted to the Colorado Bureau of Investigations,

c.  which were then accessed by **Colorado Department of Corrections (CDOC),** which, under the policies of its director, imposed a "permanent ineligible status" on Plaintiff for employment with the State of Colorado.

d.  The fraudulent records were also accessed by Colorado Department of Regulatory Agencies, Board of Nursing, who opened an investigation into Hall's nursing license based on the most recent arrest.

e.  After the most recent arrest, an anonymous complaint was made to DORA about Hall implying that Hall was a thwarted mass shooter, using the arrest for 25CR632 as evidence that I should lose my nursing license.

f.  The **Colorado Mental Health Hospital in Pueblo (CMHHIP),** under the policies of its director, used this status as a pretext to terminate Plaintiff's employment, trespass her from the property and retroactively alter their emails offering employment to Hall to rescind the offers and confirmations.

g.  The **No Kings Security, including Brandon Martin and Joshua Archuleta,** unlawfully seized Plaintiff's firearm and refused to return it, constituting an deprivation of property and rights under color of authority.

h.  The gun was carelessly thrown to the ground and picked up by a protestor before **Pueblo Police Department** then took possession of the weapon and continued the deprivation of Hall's second amendment rights to the point of this writing.

i.  PPD took possession of Hall, at the No Kings protest, transferring Hall to Pueblo County Judicial Center, where a document bearing Brandon Martin's name was removed from Hall's possession by PCSO deputies and was not placed in her property, to disguise the involvement of PPD and Jim Martin's son, Brandon Martin.

j.  While in PCSO custody, Hall's orthodontic implements were taken from her and not
    placed in her property.

k.  PCSO subjected Hall to a moldy jail environment where she suffered constant asthma
    attacks and failed to provide for her medical needs as needed, opting to force Hall to
    use the inhaler at the convenience of PCSO.

l.  Hall was told to "drink water to thin the secretions" because "we don't have time
    right now" (to give Hall the inhaler). PCDC inmates are not permitted to possess their
    inhalers to use as needed.

m.  The diabetic meals are all carbs.

n.  The bed in the med bay cell had blood on it.

o.  Hall was treated disrespectfully by PCSO Deputies ROTHMEIER and the Transport
    Deputy, whose name has not been provided to Hall by PCSO as of this writing.

p.  Hall was subjected to a humiliating body cavity search, which involved stripping
    naked, facing away from the deputies, spreading her legs, bending at the waist,
    spreading her butt cheeks with each hand, and coughing three times.

q.  This search was done at both Judicial Center and repeated at PCDC. Taken together,
    these actions represent deliberate indifference to Hall's rights and medical needs and
    the needs of PCDC inmates in general by PCSO.

r.  This multi-agency action, predicated on fraud, deprived Plaintiff of her clearly
    established property interests (her job, her hat, her firearm), her health and liberty
    interests (her reputation, her right to pursue her chosen profession) without any
    constitutionally adequate process.

s. PPD made false statements to the media, implying that HALL intended to shoot up
the protest with 10 bullets.

At all times relevant, these Defendants were acting under color of state law.

**Specific Damages:** Plaintiff suffered the complete loss of her career, loss of past and future
income, loss of professional standing, and the loss of her personal property.

## CLAIM SIX: 42 U.S.C. § 1983 – Civil Conspiracy to Violate Constitutional Rights During arrest
## for Case 25CR632

- **Right Violated:** First, Second, Fourth, Eighth and Fourteenth Amendment rights through a
coordinated conspiracy.

- **Supporting Facts:**

20) All individual Defendants, including **Beauvais, Noeller, B. Martin, J. Martin, Archuleta,
O'Brien**, **Newton,** and the **officers listed in Exhibit A**, reached a meeting of the minds to
deprive Plaintiff of her constitutional rights.

21) Evidence of this conspiracy includes their coordinated, sequential actions: **O'Brien**
controlled the event and its security team, **Newton** and **B. Martin,** made false criminal
complaints; **B. Martin and the No Kings security team**, run by **O'Brien**, falsely
imprisoned Hall, disarmed her, injured her, stole her hat, and had her arrested for exercising
her first and second amendment rights;

22) Officers J Moore, J King, J Medina, Sais, and Okonsky, in coordination with other officers,
acted on the false report with violence;

23) Officer Jamie King drafted a warrantless arrest based on testimony provided to her by
Newton and B. Martin,

24) **Beauvais** prosecuted it without cause; and the state agencies (CDOC, CDHS) used the
"criminal history and police reports" generated by PPD to fire Hall and destroy her career.

25) The seamless, multi-year, multi-agency nature of the attack makes a conspiratorial agreement
plausible and is not explainable as a series of independent actions.

At all times relevant, these Defendants were acting under color of law or jointly with those
who were.

**Specific Damages:** As a direct result of this conspiracy, Plaintiff suffered all damages from
the coordinated constitutional violations.

## CLAIM SEVEN: Municipal and County Liability (*Monell v. Department of Social Services*)

## (Against Defendants City of Pueblo and County of Pueblo)

**Right Violated:** Constitutional violations caused by municipal and county policies, customs, or
deliberate indifference.

**Supporting Facts:**

26) The City of Pueblo and the County of Pueblo are liable for the violations because they were
caused by their official policies and customs, for which final policymakers **Noeller and J.
Martin** (City) and **Beauvais** (County) are responsible.

27) These customs include:

(1) a custom of using excessive force against political dissenters or targets of PPD and failing
to discipline officers for it;

(2) a policy, directed by **Beauvais**, of malicious prosecution for retaliatory purposes;

(3) a custom of deliberately ignoring and failing to investigate credible complaints of

misconduct and

(4) a history of prosecuting Hall based on things that either were not crimes or never

happened.

(5) These customs were the moving force behind the violations inflicted upon Plaintiff.

**Specific Damages:** As a direct result of these policies, Plaintiff suffered all damages flowing from the

constitutional violations.

**CLAIM EIGHT: VIOLATION OF THE COLORADO ENHANCED LAW ENFORCEMENT
INTEGRITY ACT (ELEIA), C.R.S. § 13-21-131 (Unreasonable Seizure – Excessive Force)
Against JAMIE KING 10853, JOSE MEDINA 1461, JORGEN MOORE 10854, REBECCA
JAEGER 2298, TYLER OKONSKY 11299, NATHAN SAIS 11567, HANNAH LYONS 11508,
DEPUTY CHIEF JIM MARTIN, OTHER PPD AS DETERMINED BY DISCOVERY;
Supervisory Defendants Noeller and J. Martin**

- **Right Violated:** Rights under Article II, Section 7 of the Colorado Constitution, which provides

  that the people shall be secure in their persons from unreasonable seizures.

- **Supporting Facts:** Plaintiff incorporates all preceding paragraphs.

  28) The physical assault by **Chad ALBAUGH and other PPD officers** during the arrest for

  Case #2019CR527, which resulted in a shattered eye socket, constituted an unreasonable

  seizure of her person under the Colorado Constitution.

  29) This conduct was undertaken with intentional or reckless disregard for Plaintiff's clearly

  established state constitutional rights.

30) Supervisory Defendants **Noeller and J. Martin** are liable under ELEIA for knowingly failing to intervene in a pattern of misconduct by their subordinates, which directly caused this violation.

**Damages Under ELEIA:** As a direct result of this violation, Plaintiff suffered physical injury, emotional distress, and invasion of her state constitutional rights.

31) **No Qualified Immunity:** Pursuant to C.R.S. § 13-21-131(1), qualified immunity is **not available** as a defense to this claim.

## CLAIM NINE: VIOLATION OF THE COLORADO ENHANCED LAW ENFORCEMENT INTEGRITY ACT (ELEIA), C.R.S. § 13-21-131 (Retaliation for Protected Speech) Against All Individual Law Enforcement Defendants

- **Right Violated:** Rights under Article II, Section 10 of the Colorado Constitution, which provides that every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty.

- **Supporting Facts:** Plaintiff incorporates all preceding paragraphs.

32) The entire campaign of malicious prosecutions and harassment by law enforcement Defendants, including the assault, the multiple false arrests initiated by **PPD/PCSO Officers in Exhibit A**, was undertaken with intentional and reckless disregard for Plaintiff's clearly established right to free speech under the Colorado Constitution. These actions were a direct response to her protests and criticism of the government.

**Damages Under ELEIA:** As a direct result of these violations, Plaintiff suffered a profound chilling of her state constitutional rights, economic harm, emotional distress, and loss of liberty. Both PPD and PCSO initially tried and may be continuing to charge for documents

requested under ELEIA pursuant to a formal complaint against the officer, deputy, or civilian

staff of either PPD or PCSO.

**No Qualified Immunity:** Pursuant to C.R.S. § 13-21-131(1), qualified immunity is **not**

**available** as a defense to this claim.

## CLAIM TEN: MALICIOUS PROSECUTION (COLORADO STATE TORT LAW)

**Against Defendant Kala Beauvais and PPD/PCSO Officers in Exhibit A who initiated charges**

- **Right Violated:** The common law right to be free from legal proceedings initiated with malice
  and without probable cause.

- **Supporting Facts:** Plaintiff incorporates all preceding paragraphs.

  33) Defendant **Kala Beauvais** and the initiating **PPD/PCSO Officers** satisfy all elements of

  malicious prosecution under Colorado law:

    a. They were a party to or participated in a criminal proceeding against Plaintiff.

    b. The proceeding was terminated in Plaintiff's favor.

    c. There was no probable cause for the proceeding.

    d. They acted with malice, which can be inferred from the lack of probable cause and

       the pattern of retaliatory harassment.

    e. Plaintiff suffered damages as a result.


**Specific Damages:** Plaintiff suffered financial damages from legal defense costs, physical

injury, reputational harm, loss of job and career, loss of educational opportunity, financial

hardship, and severe emotional distress. State law immunities are overcome by the willful and

wanton nature of the Defendants' conduct.

## CLAIM ELEVEN: ABUSE OF PROCESS (COLORADO STATE TORT LAW)

**Against Defendant Kala Beauvais**

- **Right Violated:** The common law right to be free from the misuse of legal process for an improper purpose.
- **Supporting Facts:** Plaintiff incorporates all preceding paragraphs. This claim is distinct from malicious prosecution.

  34) Defendant **Kala Beauvais**, after the initiation of the six criminal cases, used the legal process—including motions, court appearances, and discovery—for an ulterior purpose for which it was not designed: to harass, intimidate, financially drain, and destroy the career of a political adversary.

  35) The primary purpose of continuing these prosecutions, even after it became clear there was no evidence, was not to seek justice but to punish Ms. Hall. Her threats of continued prosecution were used to coerce and intimidate. The process is the punishment.

  **Specific Damages:** Plaintiff suffered damages from the costs of responding to the perverted legal process and the emotional and financial strain caused by its continuation for an improper purpose. State law immunities are overcome by the corrupt and malicious nature of this conduct.

## CLAIM TWELVE: CIVIL CONSPIRACY (COLORADO STATE TORT LAW)

**Against All Individual Defendants**

1. **Right Violated:** The common law right to be free from injury caused by a conspiracy to commit unlawful acts.

2. **Supporting Facts:** Plaintiff incorporates all preceding paragraphs.

36) All individual Defendants, including **Beauvais, Noeller, J. Martin, B. Martin, O'Brien**,

Newton, Archuleta, and the **officers listed in Exhibit A**, formed a combination of two or

more persons.

37) The object of this combination was to accomplish an unlawful purpose: the systematic

destruction of Plaintiff through a series of tortious and unconstitutional acts (assault, battery,

unlawful seizure, false imprisonment, disarmament, unlawful seizure of an instrument of

protected speech, malicious prosecution, deliberate indifference to medical needs, abuse of

process).

38) They accomplished this object through a series of concerted actions and overt acts as detailed

above, resulting in damages to the Plaintiff.

**Specific Damages:** As a direct result of this common law conspiracy, Plaintiff suffered all

damages flowing from the coordinated tortious conduct, including physical injury,

reputational harm, economic loss, and emotional distress.


**CLAIM THIRTEEN: 42 U.S.C. § 1983 – EIGHTH Amendment Violation (Deliberate Indifference to Medical Needs) During Arrest for Case #2025CR632**

**Right Violated:** Inmates have a right to medical care without deliberate indifference.

**Supporting Facts:**

1) In 2020, when Hall was in PCDC on case 2019CR527, Hall was forced to share an albuterol inhaler with other inmates with the inhaler being wiped off with an alcohol pad by the nurse between uses.
2) **In the 2025 arrest, Hall suffered asthma attacks.** Due to water leaks in the past that must certainly be known to PCSO, which operates PCDC, there is mold in the jail. As a result, Hall suffered constant asthma attacks while in custody from inhaling airborne spores.
3) While her first call for the inhaler was prompt, subsequent calls were met with delays.
4) Hall was told she could use her inhaler at medicine line morning and night.
5) Hall replied that the inhaler was prescribed "as needed."
6) Inmates are not allowed to possess albuterol inhalers in PCDC custody.
7) After constant need of the inhaler, Hall was placed in a med bay cell with blood on the bed and wall.

8) She was twice offered medicine for opiate addiction despite not using opiates since leaving the burn unit in 2020.

9) In med bay, a nurse told Hall, "we don't have time right now (to bring the inhaler)."

10) HALL was told by this nurse to "drink water to thin the secretions" instead of using the inhaler.

11) Hall requested a second drug test and use of the inhaler but was released before either request were honored.

12) PCSO at Judicial took Hall's orthodontic aligners and threw them away, causing her teeth to migrate in custody and until she could get replacements.

13) Hall witnessed the diabetics unable to eat their meal because the protein portion was too spicy and the rest of the meal was carbs, which would raise their blood sugar. This meant the diabetics were unable to eat that meal.

**Hall was subjected to abusive language and treatment by PCSO Transport Deputy and PCSO Dep ROTHMEIER while in custody.**

**RESPONSIBLE PARTIES**

- **PCSO**
- **PCDC NURSE**
- **PCSO Transport Deputy**
- **PCSO Dep ROTHMEIER**

**Specific damages**

Hall coughed up phlegm constantly during her stay at PCDC, beginning a few hours after being booked in. Hall had to spit into a trash can. Other inmates harassed HALL for coughing. This harsh coughing damages the lungs by tearing the air sacs. Hall has developed a lasting dry cough that she believes is due to the spores in the mucosal lining of her lungs, irritating her tissues, which are a result of being incarcerated in PCDC.

HALL was forced to strip, face away, spread her legs, bend at the waist, pull her butt cheek apart with her hands and cough three times as part of intake at Judicial Center. This search was repeated at PCDC.

**CLAIM FOURTEEN: 18 U.S.C. § 242 – POLICE INTIMIDATION After Arrest for Case #2025CR632**

**RIGHT VIOLATED** Plaintiff has a right to drive on the road or attend a city council meeting without being physically intimidated by Pueblo Police Officers.

**Specific Facts**

1) On Jan 17, 2019, PPD OFCR GOWIN was involved in the unconstitutional arrest, drugging, and falsification of police report in the E098139 case and HALL has served GOWIN with Subpoena duces tecum in Municipal Court.

2) On June 16th, 2025, HALL thought she had dropped her car key in front of PCDC after release so she returned to PCDC. PPD OFCR GOWIN gave Hall a citation.

3) Because HALL recognized GOWIN from previous contacts and because HALL had been on the news all weekend, she asked if he recognized her. He did not. She told him she was on the News.

4) The next day, Hall drove to her parents' house in Stonemoor Hills.

5) This address is the address Hall gave the City of Pueblo as her own so this is the address GOWIN would have for HALL.

6) There is only one road in and out of there.

7) GOWIN was parked in a city patrol vehicle in the easement and driveway of 747 McCarthy BLVD in Pueblo, CO; this area is technically in Pueblo County, outside of GOWIN's jurisdiction.

8) Gowin was also observed and recorded parking in the same location on June 18th. This area is in Pueblo County, outside the jurisdiction of Pueblo Police Department so the reason GOWIN could have for being in this location at this moment, over the course of two days, and under these circumstances was suspicious to HALL and felt intimidating.

9) Hall submitted this evidence to Municipal Court and asked for the ticket to be dismissed.

10) On June 24, 2025, Hall attended the Pueblo City Council meeting to again advocate for police and jail reform.

11) GOWIN was present.

12) GOWIN implied that Hall was the problem when Hall called him over to settle down an argument.

13) Later, after Hall spoke, she left the meeting momentarily before returning with a document for the City attorney she had forgotten to leave behind.

14) GOWIN, despite having seen HALL come, go, return, and speak, told HALL "we're not letting anyone else in" and placed his hands and body against HALL's abdomen to block her re-entry.

15) HALL replied, "don't touch me" and

16) advised GOWIN that GOWIN should not even be speaking to HALL because GOWIN was named in HALL's lawsuit.

17) HALL handed the document to the media with a verbal instruction and left.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Laura Ann Hall demands judgment against the Defendants, jointly and
severally, and prays that this Court grant the following relief:

A. **Compensatory Damages** in an amount to be determined at trial, sufficient to fully compensate
Plaintiff for her physical disfigurement and pain, her medical expenses of $24,889.71, her lost past and
future wages and earning capacity, the costs of her legal defense, her emotional distress and mental
anguish, and the loss of her constitutional rights.

B. **Punitive Damages** against each Individual Defendant in their individual capacity, in an amount
sufficient to punish their willful, malicious, and reckless disregard for Plaintiff's rights and to deter such
conduct in the future.

C. **Treble Damages** for the injuries to her business and property pursuant to the False Claims Act.

D. **Declaratory and Injunctive Relief**, including:

1. A declaration that the acts, policies, and customs of the Defendants violated Plaintiff's constitutional
rights.

2. The entry of a permanent **Consent Decree** mandating comprehensive and verifiable reforms of the
Pueblo Police Department, Pueblo County Sheriff's Office, and Pueblo County District Attorney's
Office, to be supervised by a federal monitor appointed by this Court.

3. An injunction ordering the immediate removal from office of Defendants Chief Chris Noeller, Deputy
Chief Jim Martin and any other official found to be actively engaged in ongoing unconstitutional
practices.

4. An order compelling the immediate and unconditional return of Plaintiff's seized firearm.

5. An order compelling the Defendants to take all necessary steps to expunge the fraudulent records and rescind the "permanent ineligible status" with the CDOC and any negative actions taken by DORA.

E. Reasonable attorneys' fees and the full costs of this litigation pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c).

F. Such other and further relief as the Court deems just, proper, and necessary to dismantle this corrupt enterprise.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: 08/25/2025

Respectfully submitted,

/s/ Laura Ann Hall

**Laura Ann Hall,** *Pro Se*

2208 S Prairie Avenue

Pueblo, CO 81005

(719) 420-7074

NURSENATURALE@ICLOUD.COM

---

## EXHIBIT A: LIST OF INDIVIDUAL OFFICER AND DEPUTY DEFENDANTS

*(Attached separately)*